## COMMONWEALTH *versus* The Heirs of ANDRÉ and BILLON.

The legislature of the commonwealth, for a valuable consideration, granted land to an alien, his heirs and assigns, with warranty. *Held,* that upon the death of the grantee the land descended to his heirs, who also were aliens, and that upon an inquest of office the commonwealth were estopped to set up the alienage of the grantee or of his heirs as the ground of an escheat.

ON the 25th of May, 1781, a committee of the legislature, thereunto duly authorized, by their deed duly executed, for the consideration of £1124, granted to Pierre Mathieu André, his heirs and assigns, with warranty, a tract of land in the town of Holden, which had been confiscated as estate of William Brattle. André was at that time resident in Boston, but was a subject of the king of France and alien to the commonwealth, and was never naturalized therein. The purchase was made for the benefit of Jean François Billon, likewise a subject of the king of France, and resident at Marseilles. André and Billon both died in 1810, intestate.

In February 1820, the attorney-general, pursuant to a resolve of the legislature of the 31st of January preceding, filed an information to recover seisin and possession of the land in question, alleging that it ought to escheat to the commonwealth for defect of title in any person who could by law hold the same.

The children of André, being his heirs and subjects of the king of France, and the children of Billon, being his heirs and subjects of the same king, appeared and answered to the information, alleging respectively that the title to the land had descended to them.

The cause was argued in writing.

*Morton* (Attorney-General) and *Davis* (Solicitor-General) for the commonwealth, cited 1 Bl. Com. 372, 374 ; 2 Bl. Com. 274, 293, 249 ; Co. Lit. 2, 8 ; *Sheaffe* v. *O'Neil,* 1 Mass. R. 257 ; *Fox* v. *Southack,* 12 Mass. R. 148 ; and they contended that although under the 7th article of the treaty with France of July 31st, 1801, (U. S. Laws, edit. 1815, *vol.* 1, *p.* 119,) an alien might sell his land to a citizen, yet that it could not descend to his alien heirs.

*W. Sullivan* and *W. P. Mason, contrà,* relied upon the treaty above mentioned, and likewise on the treaty of amity and commerce with France of February 1778, *Art.* 11, (U. S. Laws, *vol.* 1, *p.* 80,) the abrogation of which in 1798, (U. S. Laws, 5 *Cong.* 2 *Sess. c.* 84,) they said, did not make void rights which had been acquired under it. *Ainslie* v. *Martin*, 9 Mass. R. 460 ; *Fox* v. *Southack*, 12 Mass. R. 143 ; *Chirac* v. *Chirac*, 2 Wheat. 277. They further contended, that the commonwealth by this process could not avoid its own grant.

The opinion of the Court was read as drawn up by

PARKER C. J. It having been determined by the verdict of the jury, that the persons claiming to be the heirs of Pierre Matthieu André, and those claiming to be the heirs of Jean François Billon, are such, according to the laws of descent in France and in this country, the only question is, whether on account of their alienage, or that of their several fathers, they are prevented from inheriting the land which was purchased by André of the commonwealth, which prosecutes this suit. Without undertaking to decide what would be the effect of the alienage of these heirs under the several treaties which have been cited, we decide the cause upon the ground that the commonwealth, having conveyed the land to André, then a French subject, and received the full consideration therefor, cannot reclaim the land from him or his heirs for the cause of alienage in him or them. The deed was made by a committee fully authorized thereto by a resolve of the legislature, and by the deed the commonwealth has covenanted to warrant and defend André, his heirs and assigns, against the lawful claims of all persons whatsoever. This deed must operate as a rebutter, as it would if an individual were the grantor ; and with more reason, because the commonwealth is not liable to an action. The commonwealth, if the land were recovered, would feel itself bound to repay the consideration money, with interest. This would be a claim which could not be resisted without degrading the country. But there is no need of resorting to this remedy ; for the deed of the commonwealth to the very persons now defending as heirs to André, to whom and to whose neirs the grant was

made, is, we think, an estoppel against setting up the alienage of those persons as the ground of recovery.[1]

The judgment of the Court therefore is, that the commonwealth take nothing by their inquest.

<div style="text-align:right">

Common
wealth
v.
The Heirs of
André and
Billon.

---

[1] See per *Story* J., *Carver* v. *Jackson*, 4 Peters's Sup. C. R. 87; *Penrose* v. *Griffith*, 4 Binn. 231; *Garwood* v. *Dennis*, 4 Binn. 314; *Commonwealth* v. *Pejepscot Proprietors*, 10 Mass. R. 155; Stearns on Real Actions, (2d ed.) 179; *Gerrish* v. *Bearce*, 11 Mass. R. (Rand's ed.) 200, note *a*.

If an alien purchases with the King's license, it seems that he may hold effectually. See 14 *Hen.* 4, 20; Hargr. Co Litt. 2 *b*, note 2.